ISHEE, J.,
for the Court:
¶ 1. In May 2009, Matthew Gibbs was indicted for burglary of a dwelling. He was initially represented by retained counsel, who moved for a continuance of Gibbs’s trial until the next term of court. Over a year later, Gibbs’s retained counsel moved to withdraw due to nonpayment of his fees and due to Gibbs’s refusal to communicate with him for over a year. The Smith County Circuit Court granted the motion. The circuit court then appointed a public defender to represent Gibbs. The public defender had to withdraw as Gibbs’s counsel due to a conflict of interest. The circuit court appointed Gibbs new counsel *2 and set a new trial date in May 2012. Gibbs, however, fired the newly appointed counsel and told the circuit court he wished to retain his own counsel. Gibbs also requested that the circuit court delay the trial once again. The circuit court allowed Gibbs the option to retain counsel, but refused to continue the trial again since the matter had been pending for almost three years due, in large part, to Gibbs’s own actions or inactions. Gibbs appeared for trial without retained counsel and indicated that he intended to proceed pro se. The circuit court appointed Gene Tullos to serve as “arm-chair representation” for Gibbs and, after extensive questioning, allowed Gibbs to represent himself. At the close of the trial, the jury returned a guilty verdict. The circuit court sentenced Gibbs to twenty-five years in the custody of the Mississippi Department of Corrections (MDOC) and ordered him to pay $30,000 in restitution. Gibbs now appeals, claiming he was deprived of his constitutional right to counsel. Finding no error, we affirm.
STATEMENT OF FACTS
¶ 2. In May 2009, Gibbs was indicted for burglarizing a house. The indictment charged that Gibbs and his cousin, Rodney Gibbs, burglarized a home in Smith County, Mississippi, in September 2008. Gibbs and Rodney retained joint counsel after their indictment. Their counsel moved to continue the trial until the next term of court. The circuit court granted the continuance, and set the trial for the fall of 2010.
¶ 3. In October 2010, defense counsel requested permission to withdraw from the case. He reasoned that he had not been paid by Gibbs or his cousin, had not been in touch with them in over a year, and had no contact information for either of the men. The circuit court allowed him to withdraw, and appointed a public defender to jointly represent Gibbs and his cousin.
¶ 4. After the public defender negotiated a plea bargain for Rodney to enter a guilty plea in exchange for his testimony against Gibbs, the public defender asked the circuit court for permission to withdraw as Gibbs’s attorney due to the conflict of interest. The circuit court allowed the public defender to withdraw and immediately appointed another attorney to represent Gibbs at trial.
¶ 5. On April 23, 2012, the same day the public defender withdrew and Gibbs was appointed new counsel, Gibbs refused the circuit court’s appointed counsel, and indicated that he preferred to retain counsel on his own. Gibbs also asked for a continuance. The circuit court granted Gibbs’s request to retain counsel but refused the request for a continuance, reasoning that the case had already been delayed three years.
¶ 6. On May 10, 2012, the day of the trial, Gibbs arrived in the courthouse without retained counsel, stating he wished to enter a guilty plea pursuant to plea bargaining with the State. The circuit court appointed Gene Tullos to represent Gibbs in entering his guilty plea. After the guilty-plea petition was prepared and presented to the circuit court, the circuit court fully questioned Gibbs as to his understanding of entering a guilty plea. At the end of the circuit court’s conversation with Gibbs, the court asked Gibbs if he wanted to proceed with the entry of the guilty plea and waive his constitutional right to a trial. Gibbs responded, “No, sir.” The circuit court then asked Gibbs if he wanted a trial. To which Gibbs responded, “Yes, sir.” However, Gibbs indicated that he wished to proceed pro se during the trial.
¶ 7. The circuit court thoroughly questioned Gibbs as to his understanding and *3 desire to proceed pro se. After acknowledging his rights and the risks of proceeding pro se, the circuit court allowed Gibbs to serve as his own attorney and appointed Tullos to serve as arm-chair or stand-by counsel for Gibbs.
¶ 8. After a trial on the merits, the jury returned a guilty verdict. The circuit court sentenced Gibbs to twenty-five years in the custody of the MDOC and ordered him to pay fees and $30,000 in restitution.
DISCUSSION
¶ 9. Gibbs’s sole issue on appeal is his claim that he was denied his constitutional right to counsel during the trial. “Our standard of review on such constitutional issues is de novo.” Hayden v. State, 972 So.2d 525, 535-36 (¶ 50) (Miss.2007) (citation omitted). The United States Constitution and the Mississippi Constitution guarantee a criminal defendant due process of law, which includes the right to counsel. Id. at 536 (¶ 51) (citing U.S. Const. amends. VI, XIV; Miss. Const., art. 3, § 26). An accused is granted the right to retain counsel of his choice or he may choose to have counsel appointed for him. Id. (citing Wheat v. United States, 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988)). Nonetheless, the Mississippi Supreme Court has recognized that while a “defendant should be allowed a fair opportunity to secure counsel of his own choice[,]” that right is not unlimited. Id. at 536 (¶¶ 51-52) (citation and quotation marks omitted).
¶ 10. Here, the circuit court first allowed Gibbs to retain his own counsel in conjunction with his cousin. However, after securing a year-long continuance of their trial, Gibbs and his cousin failed to pay their counsel or remain in contact with him. The withdrawal of their initially retained counsel was by reason of their own inaction. After appointing a public defender to represent the two men, the circuit court had to permit the public defender to withdraw as Gibbs’s counsel due to a conflict of interest. This was of no fault of any party. Finally, the circuit court granted Gibbs new counsel but Gibbs refused, preferring instead to retain his own counsel. The circuit court permitted Gibbs the opportunity to retain new counsel but refused to continue the trial again since the matter had been pending for approximately three years. A month later, when the trial was set to begin, Gibbs arrived in the courthouse without retained counsel but with the intention of entering a guilty plea following plea-bargain negotiations he had made with the State. After the circuit court appointed Tullos to enter the guilty plea for Gibbs, Gibbs changed his mind and told the court he wished to proceed to trial pro se.
¶ 11. The circuit court discontinued its on-the-record discussion with Gibbs regarding his guilty plea and thoroughly questioned Gibbs about his understanding of his constitutional right to counsel. The circuit court stated:
Mr. Gibbs, since you have decided to go to trial, I need to tell you a few things. When the court determines that a criminal defendant wants to go to trial and act as [his] own attorney, I have to tell you some things, and we’ve already talked about this on one prior occasion and you told me that you understood about the trial, that you didn’t want a lawyer, and I[,] at that point[,] told you that you could hire one. I appointed one. You rejected him.
You had one lawyer that had to get out because he represented [a] co-defendant. I let him withdraw. Now, I must make a determination that you understand what you are doing, and it’s voluntary and that you know what you are doing. *4 You have the right to have an attorney here. You can hire one of your own choosing. If you can’t afford one, I will appoint one to represent you, which I have done and you rejected that one and did not request another one to be appointed. And it would not be fair to any lawyer to have to come in here today and try this case without having gone over all of the case material and evidence before they got here. So we are past that point, which is what we talked about the last time you were here.
You have a right to conduct a defense and allow whatever role you want to play and allow Mr. Tullos to help you. He’s sitting here as what we call arm[-]chair counsel. So if you have any questions, you can confer with him. Tell me you want to confer with him, I’ll let y’all talk.
[[Image here]]
You have the right to proceed pro se, and it increases the likelihood of a trial outcome that is unfavorable to you. And we’ve talked about this before. I wanted to make sure this is on the record. Do you still wish to proceed pro se in this matter? Do you still wish to represent yourself in this matter?
Gibbs responded that he still wished to proceed pro se.
¶ 12. It is evident that the circuit court attempted to provide Gibbs with adequate representation during each stage of the pretrial proceedings. Gibbs was appointed counsel three times. The first appointed counsel had to withdraw due to a conflict of interest, and another was refused by Gibbs. The third was Tullos, who was appointed to assist Gibbs with entering his guilty plea; however, Gibbs eventually chose to proceed to trial pro se. Gibbs was also granted the right to retain counsel on two occasions. The first retained counsel withdrew due to nonpayment of fees and the counsel’s inability to contact Gibbs for over a year. On the second occasion, Gibbs simply did not retain counsel prior to the trial and chose to represent himself instead.
¶ 13. We cannot say that Gibbs was denied his constitutional right to counsel. Through a series of events, Gibbs either failed to retain counsel, failed to keep his retained counsel, lost his appointed counsel due to a withdrawal, or rejected his appointed counsel. These occurrences were not the work of the circuit court denying Gibbs his constitutional right to counsel. The circuit court also thoroughly questioned Gibbs regarding his understanding of his right to counsel. The circuit court went so far as to tell Gibbs that his choice to proceed pro se would likely result in an unfavorable verdict. Nonetheless, Gibbs affirmatively stated that he wished to represent himself at trial. As such, we And this issue to be meritless.
¶ 14. THE JUDGMENT OF THE SMITH COUNTY CIRCUIT COURT OF CONVICTION OF BURGLARY OF A DWELLING AND SENTENCE OF TWENTY-FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND TO PAY $30,000 IN RESTITUTION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO SMITH COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.